T.C. Memo. 2010-275

UNITED STATES TAX COURT

SAMIR H. ABUMAYYALEH AND ZUHRA R. ABUMAYYALEH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26102-07.                    Filed December 14, 2010.

<u>Mark A. Pridgeon</u>, for petitioners.

<u>James L. Gessford</u>, for respondent.

MEMORANDUM OPINION

MORRISON, <u>Judge</u>:  Respondent IRS audited the 1993, 1994, and
1995 income-tax returns of petitioners Samir and Zuhra
Abumayyaleh.  The revenue agent concluded that the Abumayyalehs
owed more tax than they had reported on their tax returns.  The
IRS provided the Abumayyalehs an administrative appeal.  The IRS
Appeals officer also concluded that the Abumayyalehs owed the

additional tax. Both the audit and the appeal processes were lengthy. Eventually, the Abumayyalehs settled their tax liabilities with the IRS. The IRS assessed the agreed additional tax and also assessed interest on the unpaid tax liabilities.

The Abumayyalehs made an administrative request for abatement of a portion of the interest on the ground that the IRS did not perform any significant work on the audit and appeal during specified periods. The parties have submitted this case under Rule 122 for decision upon stipulated facts instead of a trial. We adopt their stipulations.[1]

## Background

1. June 9 Through September 7, 1995: The Audit Begins.

The Abumayyalehs do not request interest abatement for this period. We describe the events of this period anyway in order to give a complete background.

On June 9, 1995, IRS Revenue Agent Sally Crandall mailed the Abumayyalehs a letter stating that their 1992 return had been assigned to her for audit. The letter scheduled an interview with them for June 29, 1995. It asked them to bring several documents, including bank statements covering the period from

_____

[1]Except as otherwise indicated, all section references are to the Internal Revenue Code as in effect with respect to the interest assessments to which this case relates. All Rule references are to the Tax Court Rules of Practice and Procedure.

December 1991 to January 1993 and copies of their 1993 and 1994 returns. The Abumayyalehs attended the interview.

On July 19, 1995, Agent Crandall prepared a workpaper analyzing bank deposits by Cup Foods, Inc., Mr. Abumayyaleh's S corporation. (S corporation owners must include their proportionate shares of the S corporation's income in their own income. A bank-deposit analysis is a common way to determine whether a taxpayer may have unreported income. See United States v. Boulet, 577 F.2d 1165, 1167 (5th Cir. 1978).) On August 19, 2005, Agent Crandall prepared another workpaper, which described the ownership and management of Cup Foods.

2. September 8, 1995, Through April 17, 1996: The First Period for Which the Abumayyalehs Request Interest Abatement

The Abumayyalehs allege that from September 8, 1995, through April 17, 1996, Agent Crandall "performed no significant work". They request interest abatement for this period.[2] For September 8 through October 24, 1995, nothing in the record shows that the IRS performed any significant work on the audit.

_____

[2]The Abumayyalehs do not distinguish interest on their 1993 taxes, interest on their 1994 taxes, and interest on their 1995 taxes with respect to each of the periods for which they request abatement. The IRS employees on their case apparently worked on the three years together as a single project, which started as an audit of 1992 but expanded later to include 1993 and 1994, then 1995. Thus, it appears that the delays at issue likely did not affect administrative proceedings for just one or two of the tax years, but all of them together. Therefore, we construe each of the Abumayyalehs' abatement requests to apply to interest that accrued on their 1993, 1994, and 1995 taxes over the period for which abatement is requested.

On October 25, 1995, Agent Crandall, or another IRS agent at her direction, generated "Currency Banking and Retrieval System" reports that related to Mr. Abumayyaleh and Cup Foods.  These reports appear to be summaries of records of certain transactions involving large amounts of money.  Also on October 25, 1995, Agent Crandall issued Mr. Abumayyaleh two information document requests, or IDRs.  The first IDR was for copies of his insurance policies.  The second IDR requested an explanation of a business known as "Check Stop".  Each IDR stated that it related to the tax year 1992.  The due dates on the IDRs were November 7 and 8, 1995, respectively.  It was about then, we infer, that Agent Crandall prepared a workpaper describing Mr. Abumayyaleh's responses to the insurance-policy IDR.  We do not know whether Mr. Abumayyaleh responded to the Check Stop IDR.

For the period from November 9, 1995, through April 17, 1996, the record is silent as to whether the IRS performed any significant work on the audit.

In summary, the stipulated facts and exhibits show that the September 8, 1995, through April 17, 1996, period includes some significant work by IRS auditors, refuting the Abumayyalehs' assertion that it did not include any.[3]

---

[3]We observe that as of the end of the period, the IRS may not have "contacted the taxpayer in writing with respect to" a payment (or deficiency) for 1993, 1994 or 1995, as sec. 6404(e)(1) would require for interest abatement:  the IRS

(continued...)

3.   April 18, 1996:  A Day in the Audit

The record before the Court does not indicate what may have happened on this day, but the Abumayyalehs do not request interest abatement for this day.

4.   April 19, 1996, Through February 13, 1997:  The Second Period for Which the Abumayyalehs Request Interest Abatement

The Abumayyalehs allege that from April 19, 1996, through February 13, 1997, Agent Crandall "performed no significant work".  They request interest abatement for this period.

On April 24, 1996, Agent Crandall, or another IRS employee at her direction, generated "Information Returns Processing summary sheets" relating to Mr. Abumayyaleh for tax years 1992 through 1994.  These documents are summaries of certain information returns about Mr. Abumayyaleh received from third parties.

On April 26, 1996, Agent Crandall mailed the Abumayyalehs a notice that she was expanding the audit to cover their 1993 and 1994 tax returns.  This letter asked them to bring their 1995 return to an appointment which would be scheduled.  (The record before us indicates that the IRS later extended the audit to the

---

[3](...continued)
apparently only later informed the Abumayyalehs that their returns for those years were coming under audit.  But we need not decide the issue, which the IRS does not address, because we deny interest abatement on the ground that no delay has been established to be due to an error or delay in a ministerial act.

1995 tax return. The IRS issued a 30-day letter on September 6, 1997, proposing an adjustment for 1995.)

About May 1996, Agent Crandall, or another IRS agent at her direction, summoned from TCF Bank records of deposits made and checks drawn by Mr. Abumayyaleh. In order to respond to the summons, a clerk at the bank issued an internal request bearing the date May 28, 1996, for the records. (We infer from the date of the request that the IRS issued the summons about May 1996.)

From June 1996 to October 2, 1996, the record is silent as to whether the IRS performed any significant work on the audit.

On October 3, 1996, Agent Crandall conducted a bank-deposit analysis of the TCF Bank account for 1993.[4] Also on this date she issued Mr. Abumayyaleh two IDRs asking about transfers of funds among three bank accounts, and another IDR requesting documents relating to a property transaction.

On November 19, 1996, Agent Crandall asked her supervisor in writing for permission to ask the Abumayyalehs to extend the periods of limitation on assessment for tax years 1992 and 1993. (The purpose of such an agreement is often to give the IRS additional time to determine the correct tax before the IRS must finalize its determination or lose the ability to collect any tax.) The parties agreed to extend the periods of limitation.

---

[4]The stipulation erroneously says this analysis occurred in 2003, but it is obvious from the relevant exhibits incorporated into the stipulation that the year is 1993.

The audit continued, without issuance of a deficiency notice, past the date Agent Crandall identified on the request as the end of the original period of limitation.

For the period December 1996 through January 1997 the stipulated facts and exhibits do not show that the IRS performed any significant work on the audit.

On February 3, 1997, the IRS received a tip from a third party suggesting that Mr. Abumayyaleh might have unreported income.

On February 12, 1997, Agent Crandall prepared a "Comparative Balance Sheet & Income Statement" for Cup Foods.  This document consists of a series of tables and graphs comparing Cup Foods' financial status from year to year.[5]

In conclusion, the second period contains instances of significant IRS audit activity.

5.   <u>February 14 Through November 11, 1997:  The Audit Concludes, and the Abumayyalehs Request an Administrative Appeal</u>.

The Abumayyalehs do not request interest abatement for this period.  We describe the events of this period anyway in order to give a complete background.

On September 6, 1997, Agent Crandall mailed the Abumayyalehs a notice of proposed deficiencies and penalties for their 1993,

---

[5]The record before the Court does not indicate whether the amounts shown had been determined through investigation or simply provided by the Abumayyalehs.

1994, and 1995 tax years. Such a notice is known as a "30-day letter" because it requests a response within 30 days. A response can lead to administrative review at the IRS Appeals Office.

On November 11, 1997, the Abumayyalehs mailed Agent Crandall a letter stating that they disagreed with her determinations and requesting a conference before the IRS Appeals office. We refer to this letter as the protest.

6. November 12, 1997, Through September 28, 1998: The Third Period for Which the Abumayyalehs Request Interest Abatement

The Abumayyalehs allege that from November 12, 1997, through September 28, 1998, "no significant work took place". They request interest abatement for this period.

At some time between September 6, 1997, the date she mailed the 30-day letter, and November 18, 1997, the date on which the IRS received the Abumayyalehs' protest, Agent Crandall moved from the IRS's St. Paul office to its Seattle office. As a consequence, the Abumayyalehs' audit was transferred to Revenue Agent Shawn Erickson. Agent Crandall prepared what the parties describe as a "response" to the protest and faxed the response to Agent Erickson for him to complete the response and send it to Appeals. We infer from the heavily redacted "Report Transmittal" form letter that Agent Erickson subsequently sent to Appeals that the response was a discussion of the auditors' basis for their proposed adjustments. Agent Crandall faxed the response to Agent

Erickson on December 30, 1997.  Agent Crandall wrote on the fax cover sheet: "I apologize for the delay--misplaced the mail--I put it in wrong box."

By January 8, 1998, the Appeals Office had received the Abumayyalehs' case file, including Agent Erickson's transmittal letter, and had assigned the Abumayyalehs' case to Appeals Officer Sandra Williams.  Appeals Officer Williams conducted a "preliminary review" of the case on January 12, 1998.  On or about January 21, 1998, she mailed the Abumayyalehs a letter stating that their case had been referred to Appeals as requested, that because her inventory of cases was "so large" she would not be able to consider theirs right away but would start their case and contact them "as soon as I can", and that they could write to or call her at the address on the letter.  On January 22, 1998, she conducted a "preliminary review" of a related case she had received involving Cup Foods.

The IRS Appeals Office appears not to have done any work on the Abumayyalehs' case from January 22 through September 1, 1998. On September 2, 1998, Appeals Officer Williams performed four hours of "analysis" of the case.  (Some of the entries in her log, including the entries that document these four hours of work, are terse, but we see no reason to question them.)

In conclusion, the third period contains instances of significant IRS audit activity.

7.    September 29, 1998, Through June 1999:  The IRS Actively Works on the Abumayyalehs' Administrative Appeal.

The Abumayyalehs do not request interest abatement for this period.  We describe the events of this period anyway in order to give a complete background.

On September 29, 1998, Appeals Officer Williams mailed a letter to the lawyer for the Abumayyalehs requesting their consent to extend the periods of limitation on assessment for tax years 1993 through 1995 to December 31, 1999.  On October 9, 1998, the Abumayyalehs mailed the signed consent form back to the Appeals officer.  She received it on October 13, 1998, and sent the lawyer back a copy on or about October 14, 1998.

Appeals Officer Williams performed about 25 hours of work on the Abumayyalehs' case during the three-month period of November 1998 through January 1999.  Some of this work was preparing for and participating in a teleconference with their lawyer.

Appeals Officer Williams' work on the case from March 1 through May 31, 1999, consisted of four telephone calls to request information from the Abumayyalehs' accountant.  On or about June 24, 1999, the lawyer for the Abumayyalehs provided the requested information in a letter that is four pages long and has five pages of attachments.  In the letter, the lawyer explained that the information provided is "a result of some fairly lengthy discussions with my client and his accountant".  The IRS received the letter on June 28, 1999.

8.   July Through September 1999:  The Fourth Period for Which the Abumayyalehs Request Interest Abatement

The Abumayyalehs allege that from July through September 1999 the Appeals Office "performed no significant work".  They request interest abatement for this period.

On July 25, 1999, Appeals Officer Williams spent eight hours considering the letter from the Abumayyalehs' lawyer.  The record does not show any other significant work on the appeal during this period.  This is the last period for which the Abumayyalehs request abatement.

In conclusion, the fourth period contains instances of significant IRS audit activity.

9.   Epilogue

The Abumayyalehs do not request interest abatement for any of the following periods.

a.   The Administrative Appeal Concludes.

Appeals Officer Williams spent several hours in each of the next several months discussing the case with the Abumayyalehs' lawyer.  On June 22, 2000, the IRS issued the Abumayyalehs a deficiency notice for their 1993, 1994, and 1995 taxes.

b.   The Parties Settle Their Underlying Tax Dispute.

The Abumayyalehs petitioned the Tax Court for redetermination of their deficiencies.  They and the IRS settled that case through a stipulated decision on June 13, 2001.  On September 3, 2001, the IRS assessed, for each of the years at

issue, the agreed amount of tax, the agreed amount of penalties, and interest computed to June 29, 2001.

   c.   The Abumayyalehs Request Interest Abatement From the
        IRS and Then the Tax Court.

On May 13, 2004, the Abumayyalehs requested that the IRS abate interest for their 1993, 1994, and 1995 tax years attributable to the four periods alleged above and for two additional periods for which they now concede interest abatement is not warranted.  The reason they gave for their request was:

> We believe that this record [i.e., the IRS's alleged
> delays] reflects many ministerial decisions by the
> Internal Revenue Service that lead [sic] to an overly
> lengthy audit process and materially contributed the
> [sic] interest that accrued in this case.  Therefore,
> abatement of the interest for the following periods
> [the periods described above] is requested[.]

The Abumayyalehs did not, however, identify any of these "many ministerial decisions".  As discussed later, their reasoning seems to be that inactivity as such is equivalent to ongoing error or delay in performing a ministerial act.

On May 11, 2007, the IRS issued a notice of determination denying the interest-abatement request on the ground that the IRS "did not find any errors or delays on our part that merit the abatement of interest" for any of the periods.

The Abumayyalehs timely filed a Tax Court petition for review of the interest-abatement determination.  They lived in Minnesota at the time.

## Discussion

The parties agree that section 6404(e)(1) contains the standard which the IRS should have used in making its interest-abatement determination. It provides:

In the case of any assessment of interest on--

(A) any deficiency attributable in whole or in part to any error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial act, or

(B) any payment of any tax described in section 6212(a) [which includes income tax] to the extent that any error or delay in such payment is attributable to such officer or employee being erroneous or dilatory in performing a ministerial act,

the Secretary may abate the assessment of all or any part of such interest for any period. For purposes of the preceding sentence, an error or delay shall be taken into account only if no significant aspect of such error or delay can be attributed to the taxpayer involved, and after the Internal Revenue Service has contacted the taxpayer in writing with respect to such deficiency or payment.

The parties do not express a view as to whether the errors and delays that the Abumayyalehs allege should be evaluated under subparagraph (A) or (B) or both. Both subparagraphs require that there be an error, or delay, by the IRS in performing a "ministerial act". Because the Abumayyalehs have not asserted and proven that there was any specific period over which the IRS permitted interest to accumulate by erring or delaying, we need

not decide whether it is subparagraph (A) or subparagraph (B) that applies.[6]

Section 6404(h)(1) provides:

> The Tax Court shall have jurisdiction over any action brought by a taxpayer who meets the requirements referred to in section 7430(c)(4)(A)(ii) to determine whether the Secretary's failure to abate interest under this section was an abuse of discretion, and may order an abatement, if such action is brought within 180 days after the date of the mailing of the Secretary's final determination not to abate such interest.[7]

We abate interest under section 6404(h)(1) only if the IRS's determination not to abate it was an abuse of discretion. See Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

As we discussed earlier, the Abumayyalehs allege that during each of the four periods for which they request abatement the IRS "performed no significant work". The parties stipulated that there were instances of IRS work during each period. We conclude that these instances of work are significant. Therefore, we have

---

[6]The IRS asserts that the Abumayyalehs caused some delays by not promptly providing information it requested and by not having maintained satisfactory records. We need not consider this assertion because we deny interest abatement on the alternate ground that the Abumayyalehs have not proven their allegations of delay.

[7]The Abumayyalehs meet "the requirements referred to in section 7430(c)(4)(A)(ii)"--which, for individuals, is a net-worth limit--and filed the petition timely.

fully considered, and rejected, the Abumayyalehs' factual contentions.[8]

The Abumayyalehs argue that the alleged absence of significant IRS work during each of these four periods should be treated as equivalent to an error or delay in a ministerial act.[9]

---

[8]We recognize that a taxpayer could have difficulty in determining the extent, if any, to which an apparent delay is actually attributable to "behind-the-scenes" work by the IRS. See Jacobs v. Commissioner, T.C. Memo. 2000-123. But the Abumayyalehs did not contend, in the alternative, that we should abate interest for parts of the periods of alleged delay in which the IRS has not shown continual work on their case. Consequently, the IRS has not been put on notice that it would have to show continual work (or justified delays), rather than just examples of work, in order to rebut the Abumayyalehs' allegations. Moreover, nothing in the record indicates that the IRS hindered the Abumayyalehs in obtaining meaningful judicial review of its interest-abatement determination by failing to answer questions about what it had been doing or of why it had not been doing anything for any period. The Abumayyalehs may simply not have asked.

[9]The Abumayyalehs' legal argument relies on the regulation defining the statutory phrase "ministerial act", and, in the alternative, challenges the validity of the regulation. See sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987).

Because we have for each period rejected the premise that the IRS "performed no significant work", the Abumayyalehs' legal argument is moot, and we decline to consider its merits.[10]

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.

---

[10]The Abumayyalehs do not claim that Agent Crandall's late-1997 mistake in the process of sending a fax to Agent Erickson was an error or delay in a ministerial act. Moreover, we do not know what portion of the 42-day period between the IRS's receipt of the Abumayyalehs' protest and Agent Crandall's successful fax of a draft response to Agent Erickson was attributable to Agent Crandall's error in handling the file, or whether the error delayed the ultimate resolution of the administrative proceeding. Therefore, we decline to address this mistake further.